UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

| | | |
|---|---|---|
| WENDI K. TAYLOR, | ) | CIV. 08-4053-KES |
| | ) | |
| Plaintiff, | ) | |
| | ) | ORDER GRANTING |
| vs. | ) | DEFENDANT'S MOTION FOR |
| | ) | SUMMARY JUDGMENT |
| UNITED LABORATORIES, INC., | ) | |
| | ) | |
| Defendant. | ) | |

Plaintiff, Wendi Taylor, asserts that defendant, United Laboratories, Inc., retaliated against her because she reported being sexually harassed. United Laboratories moves for summary judgment. Taylor opposes the motion. After reading all of the related filings and hearing oral arguments on the matter, the court grants United Laboratories' motion.

**BACKGROUND**

In the light most favorable to Taylor, the nonmoving party, the facts are as follow:

In February 1997, Taylor began working for United Laboratories as a sales representative. She sold chemical products directly to municipalities, schools, health care facilities, industrial facilities, and commercial establishments. She also was responsible for training, motivating, and managing other sales representatives. In 2005, Taylor told her then-supervisor, Paul O'Neill, that she wanted to be a regional sales manager.

On April 6, 2006, Taylor reported to Julie Remington, the Director of Human Resources, that Taylor's then-manager, John Bacon, grabbed the

back of Taylor's head and tried to kiss her in 1999. Taylor also informed Remington that Bacon followed her during a sales conference in Savannah, Georgia, from April 21, 2006, through April 23, 2006. Taylor informed Remington that Bacon repeatedly followed her from bus to bus and would sit beside her while they were at the sales conference. Bacon also had kept trying to touch her arm and had told dirty jokes. Remington investigated the allegation and did not find any evidence to support Taylor's claims.

On November 27, 2006, an opening for a regional sales manager position was filled by another person. On February 28, 2007, Taylor's name was removed as a contact person on a contract with the state of South Dakota. Taylor was also required to pay half of the freight costs for her sales associated with the state of South Dakota contract even though she had not been required to pay freight costs in the past.

On April 9, 2007, Taylor filed a charge of discrimination against United Laboratories. On August 30, 2007, numerous accounts were not assigned to Taylor even though Taylor claims her supervisor, O'Neill, previously told her that she would receive the accounts. Then on October 9, 2007, Taylor was no longer permitted to use her "house account" that allowed her to give free samples to customers.

## ANALYSIS

Summary judgment is proper "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The burden is initially placed on the

moving party to establish the absence of a genuine issue of material fact and that the party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) ("[A] party seeking summary judgment always bears the initial responsibility of . . . demonstrat[ing] the absence of a genuine issue of material fact." (internal quotations omitted)).

Once the moving party has met its initial burden, the nonmoving party "may not rely merely on allegations or denials in its own pleading[.]" Fed. R. Civ. P. 56(e)(2). Rather, the nonmoving party must, "by affidavits or as otherwise provided in this rule[,] set out specific facts showing a genuine issue for trial." *Id.* For purposes of summary judgment, the facts and inferences drawn from those facts are "viewed in the light most favorable to the party opposing the motion." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (quoting *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962)).

The Second Amended Complaint asserts a retaliation cause of action under Title VII and SDCL 20-13-10. The South Dakota Supreme Court in *Huck v. McCain Foods*, 479 N.W.2d 167 (S.D. 1991), interpreted SDCL 20-13-10 as being "comparable to the corresponding provision in Title VII" and applied federal case law construing Title VII in its analysis of the state-law retaliation claim. *Id.* at 169. Thus, the court's analysis of the Title VII claim applies similarly to the state-law retaliation claim. *See Petersen v. ProxyMed, Inc.*, 617 F. Supp. 2d 835, 845-46 (D.S.D. 2008).

The familiar burden-shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), applies in analyzing a motion

for summary judgment when there is no direct evidence of retaliation against an employee that engages in protected activity. *Jackson v. United Parcel Service, Inc.*, 548 F.3d 1137, 1142 (8th Cir. 2008) (citing *Kasper v. Federated Mut. Ins. Co.*, 425 F.3d 496 502 (8th Cir. 2005)). Under this framework, "plaintiff first must demonstrate a prima facie case of retaliation to survive summary judgment." *Id.* (internal quotation and citation omitted). "To meet this burden, [the plaintiff] must show that '(1) she engaged in a protected activity, (2) she suffered an adverse employment action, and (3) there was a causal connection between the protected activity and the adverse employment action.' " *Id.* (citation omitted).

After the prima facie case is established, "the burden shifts to the defendants to articulate a legitimate, nondiscriminatory reason for their actions." *Thomas v. Corwin*, 483 F.3d 516, 528 (8th Cir. 2007) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 804 (1973)). "This burden is one of production, not persuasion; it can involve no credibility assessment." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142 (2000) (quotation and citation omitted). "If the employer successfully makes this showing, the burden shifts back to the plaintiff to show the employer's proffered reason was a pretext." *Kasper*, 425 F.3d at 502 (citation omitted). "[A] plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 148 (2000) (applying the *McDonnell Douglas* burden-shifting analysis in the context of an age

discrimination claim); *see also McArdle v. Dell Prods. L.P.*, 293 Fed. Appx. 331, 339 (5th Cir. 2008) (unpublished opinion) (applying the reasoning in Reeves in a retaliation case).

## I.     Prima Facie Case for Retaliation Claim

### A.  Protected Activity

United Laboratories argues that failing to promote Taylor to the regional sales manager position, removing her name as the contact person on a contract with the state of South Dakota, and requiring her to pay half of the freight costs cannot be construed as retaliation because those events occurred prior to the formal charge of discrimination against United Laboratories. This argument fails, however, because it is undisputed that Taylor first reported two separate sexual harassment incidents in April 2006, to the Director of Human Resources. This report occurred at least seven months prior to the first alleged retaliatory act. As the Eighth Circuit Court of Appeals stated in *Buettner v. Arch Coal Sales Co.*, 216 F.3d 707 (8th Cir. 2000), "Title VII's prohibition against retaliatory discrimination protects activities ranging from filing a complaint to *expressing a belief that the employer has engaged in discriminatory practices.*" *Id.* at 714 (emphasis added). By reporting the alleged incidents to her supervisor, Taylor expressed her belief that Bacon had sexually harassed her and had recently continued to sexually harass her. Thus, Taylor's act of reporting the alleged incidents constitutes protected activity. *See id.*

United Laboratories also argues that summary judgment is appropriate because Bacon's behavior did not constitute sexual harassment

as a matter of law. To support this argument, United Laboratories relies on *Meriwether v. Caraustar Packaging Co.*, 326 F.3d 990 (8th Cir. 2003). In *Meriwether*, the Eighth Circuit Court of Appeals held that a "lone grabbing [of a co-worker's buttock with force near the upper thigh] and subsequent encounter [did] not . . . create an abusive working environment." 326 F.3d at 993 (citations omitted).

The holding in *Meriwether* is not applicable to this case because there the issue was whether the alleged behavior actually created a "hostile work environment sexual harassment." 326 F.3d at 993. While Bacon's alleged behavior might not have actually created a hostile work environment as a matter of law, "[p]roof of a retaliation claim is not the same as a direct claim of discrimination." *Van Horn v. Specialized Support Servs., Inc.*, 269 F. Supp. 2d 1064, 1072 (S.D. Iowa 2003) (citations omitted) (rejecting the argument that a court's "finding for Defendant on the sexual harassment claim necessarily exonerates it on the retaliation claim"); *see also Foster v. Time Warner Entm't Co., L.P.*, 250 F.3d 1189, 1195 (8th Cir. 2001) (stating in the context of a claim under the Americans with Disabilities Act that "[p]roof of a retaliation claim is not the same as a direct claim of disability discrimination"). "A plaintiff need not establish the conduct which she opposed was in fact" sexual harassment. *Buettner*, 216 F.3d at 714. Rather the standard is whether Taylor had a "good faith, reasonable *belief* that the underlying challenged action violated the law." *See id.* (emphasis added).

United Laboratories then argues that Taylor did not have the required "good faith, reasonable belief that the underlying challenged action violated

6

the law." *See id.* To support this argument, United Laboratories relies on *Boone v. Larson Manufacturing Co., Inc.*, 299 F. Supp. 2d 1008 (D.S.D. 2003). The South Dakota District Court in *Boone* held that "no reasonable person could have believed that the two isolated incidents of [a supervisor] commenting about [an employee's] breasts violated Title VII's standard." 299 F. Supp. 2d at 1021-22 (citations omitted). *Boone* is materially distinguishable from this case, however, because here the alleged behavior involved physical contact in an attempt to perform an apparent sexual act.[1]

Viewing the facts in the light most favorable to Taylor, a jury could reasonably find that Taylor had a good faith, reasonable belief that Bacon's act of grabbing the back of her head and trying to kiss her violated the law. *Cf. Van Horn*, 269 F. Supp. 2d at 1072 (finding "that Plaintiff believed KB's grabbing of her breast was unlawful sexual harassment . . . and that this belief was both reasonable and in good faith"). Thus, United Laboratories' argument that its actions toward Taylor cannot be considered retaliation as a matter of law because she did not partake in protected activity is without merit. *See Buettner*, 216 F.3d at 714.

## B. Adverse Employment Action

United Laboratories argues that Taylor did not experience an adverse employment action by not being promoted to a regional sales manager because she was not qualified for the position. Specifically, United

---

[1] United Laboratories argues that Taylor's seven-year delay in reporting the first alleged incident demonstrates as a matter of law that she did not have a good faith belief that Bacon's actions violated the law. There is evidence, however, that Taylor "actually had reported [the first incident] immediately." (Docket 73, Ex. 1 at 7.)

Laboratories argues that Taylor was not "Qualified at Expert Level Technical Sales," which is a prerequisite for becoming a regional sales manager. (Docket 77, Ex. 11 at 2.) Taylor did not respond to this argument in her brief. She does not dispute that being qualified at Expert Level Technical Sales is an explicit requirement for becoming a regional sales manager. (Docket 89 at 1.) And she does not allege that she satisfied that requirement. Taylor does, however, state in her Response to Defendant's Statement of Undisputed Material Facts that she did not "have to do anything special, except for the training, and take a couple tests." (Docket 89 at 12.)

The Eighth Circuit Court of Appeals has not directly held that to show an adverse employment action an employee must demonstrate that she was qualified for the position. The court has stated, however, that a prima facie case for racial discrimination in the failure to promote context requires evidence that the employee "was qualified . . . for a promotion to an available position." *Brown v. Mo. State Highway Patrol*, 56 Fed. Appx. 282, 284 (8th Cir. 2003) (citations omitted). It stands to reason that there is no adverse employment action when an employee is not promoted to a position for which the employee would not otherwise qualify. *See Honor v. Booz-Allen & Hamilton, Inc.*, 383 F.3d 180, 189 (4th Cir. 2004) ("Although failure to promote can constitute an adverse employment action for the purposes of a retaliation claim under certain circumstances, . . . it does not [when the employee] was not qualified for the promotion[.]" (citation omitted)).

The only argument made by Taylor with regard to this issue is that she was promoted in the past. There is no evidence, however, that Taylor qualified for the regional sales manager position. And the fact that United Laboratories previously promoted Taylor does not establish that she is qualified for an additional promotion. Taylor has not even argued that she was qualified for the sought-after position. Thus, she has not established that United Laboratories' failure to promote her constituted an adverse employment action.

Taylor also contends that United Laboratories' removal of her name as a contact person on a contract with the state of South Dakota, requirement that she pay half of the freight costs for her sales that were associated with that state of South Dakota contract, and refusal to assign Taylor numerous accounts constitute an adverse employment action. Taylor contends that she did not receive some commissions because United Laboratories removed her name as a contact person on a contract. (Docket 73, Ex. 1 at 10.) And it is reasonable to infer that Taylor's income was effectively reduced because she was subsequently required to pay half of the freight costs. It is also reasonable to infer that United Laboratories' refusal to assign numerous accounts to Taylor prevented her from otherwise receiving substantial income.

Thus, viewing the evidence in the light most favorable to Taylor, there is evidence that these alleged actions either prevented Taylor from receiving commissions that she was otherwise entitled to or interfered with Taylor's ability to sell to customers, which in turn caused Taylor to receive

substantially less income. (Docket 82 at 10.) A reduction in an employee's income constitutes an adverse employment action. *See Sallis v. Univ. of Minn.*, 408 F.3d 470, 476 (8th Cir. 2005) ("An adverse employment action means 'a material employment disadvantage, such as a change in salary, benefits, or responsibilities.'" (citation omitted)). As a result, the court finds that Taylor has sufficiently demonstrated that she suffered an adverse employment action as a result of these various actions.

With regard to Taylor's house account, there is evidence that United Laboratories interfered with Taylor's ability to use her house account for purposes of giving free samples to her customers. Taylor admits, however, that she was able to obtain the sought-after items by using her supervisor's house account. (Docket 89 at 19.) She has presented no evidence that this interference caused any harm. "Because she does not suggest th[is] action[] caused any harm, let alone significant harm, . . . [the action] would not have deterred a reasonable employee from engaging in protected activity." *Devin v. Schwan's Home Serv., Inc.*, 491 F.3d 778, 786 (8th Cir. 2007) ("[R]etaliatory actions must be material, producing significant rather than trivial harm."). Thus, summary judgment is granted with regard to Taylor's house account because there is no evidence that alleged interference caused Taylor to experience a significant harm.

### C. Causal Connection

United Laboratories argues that there is no evidence of a causal connection between any alleged retaliation and Taylor's protected activities. "An inference of a causal connection between a charge of discrimination and

termination can be drawn from the timing of the two events." *Peterson v. Scott County*, 406 F.3d 515, 524 (8th Cir. 2005). In some cases, temporal proximity may be sufficient to demonstrate a prima facie case under *McDonnell Douglas. See O'Bryan v. KTIV Television*, 64 F.3d 1188, 1193-94 (8th Cir. 1995). But "[g]enerally, more than a temporal connection between the protected conduct and the adverse employment action is required to present a genuine factual issue on retaliation." *Kiel v. Select Artificials, Inc.*, 169 F.3d 1131, 1136 (8th Cir. 1999) (en banc).

Taylor's first protected activity occurred on April 6, 2006. The first adverse employment action occurred approximately seven months later on November 27, 2006, when United Laboratories allegedly failed to promote Taylor. The next alleged retaliatory acts occurred three months later, on February 28, 2007, when United Laboratories removed Taylor's name as a contact from a state of South Dakota contract and Taylor effectively became responsible for half of the freight costs associated with that contract. Then Taylor's second protected activity occurred on April 9, 2007, when she filed her first charge of discrimination with the South Dakota Division of Human Rights. The first subsequent adverse employment action occurred over four months later on August 30, 2007, when United Laboratories refused to assign numerous accounts to Taylor as allegedly promised. And the last alleged retaliatory act occurred on October 9, 2007, approximately six months after Taylor filed her charge of discrimination, when she was prevented from being allowed to use her house account.

The recent opinion in *Fercello v. County of Ramsey*, \_\_\_\_ F.3d \_\_\_\_, 2010 WL 2945312 (8th Cir. July 29, 2010), guides this court's analysis. There the Eighth Circuit Court of Appeals stated that "a gap of nearly six months between [the] protected and the alleged adverse employment action . . . weaken[ed] the inference of causation . . . and [] eliminate[d] [the] ability to prove causation based on temporal proximity alone[.]" *Id.* at *7 (citations omitted). Here, the closest temporal relationship between a protected action and an alleged adverse employment action is approximately four-and-a-half months, which is the time period between Taylor's second protected activity and United Laboratories' failure to assign numerous accounts to Taylor. Thus, Taylor must identify "other indicators of causation, and do so in light of a significant time gap." *Id.*

Taylor argues that a causal connection is demonstrated by the fact that her income dramatically decreased after she engaged in the protected activity. Evidence of a decrease in salary, however, does not allow one to infer any causal connection between her protected activity and United Laboratories' actions; it only reveals the effect of United Laboratories' actions. Other than temporal proximity, Taylor simply does not identify any evidence inferring a causal connection between her protected activities and the adverse employment actions.[2] There is also no evidence in the record that other employees were treated differently than Taylor. Thus, even while

---

[2] According to Taylor's attorney, Taylor's affidavit contains a statement in which Taylor claims that a supervisor had told her something to the effect of "you are on your way out" some time after she had engaged in protected activity. The court has reviewed all of Taylor's affidavits and was unable to locate this statement.

viewing the evidence in the light most favorable to Taylor and drawing all reasonable inferences in her favor, the court finds that there is insufficient evidence to find a causal connection between United Laboratories' actions and Taylor's protected activities. While the analysis could end here, the court will nonetheless continue its analysis.

## II.    Legitimate, Nondiscriminatory Reason

If Taylor had established a prima facie case, the burden would then shift to United Laboratories to articulate a legitimate, nondiscriminatory reason for its actions. *Thomas*, 483 F.3d at 528. United Laboratories claims that it made a company-wide policy change, had an established company-wide policy, and that a change in a contractual term occurred. Specifically, Taylor's name was removed as a contact person from the state of South Dakota contract because of a company-wide change in policy that sales representatives were not to be identified as the contact person for government contracts and bids. (Docket 77 at 8.) Similarly, Taylor's house account was not terminated but only limited as a result of a company-wide policy that all house account charges be reduced. (Docket 77 at 5.) And Taylor was not assigned Willmot's accounts because United Laboratories had an established policy that an employee was not authorized to handle accounts that were outside the employee's registered sales territory.[3] (Docket 77 at 4; Docket 88, Ex. 1 at 4.) Finally, the state of South Dakota required the delivery costs to be paid for by the seller, which was reflected in

---

[3] Willmot's accounts were located in Nebraska, which was outside Taylor's registered sales territory.

the contract. (Docket 77, Ex. 14 at 3.) These proffered reasons constitute legitimate, nondiscriminatory reasons for United Laboratories' actions. "Thus, the inquiry now moves to the question of pretext–whether [Taylor] produced sufficient evidence that the proffered reason[s] were not the true reason[s] for [United Laboratories'] decision[s]." *See Wheeler v. Aventis Pharm.*, 360 F.3d 853, 858 (8th Cir. 2004).

### III.    Pretext

Even if the temporal proximity was sufficient to infer a causal connection between Taylor's protected activities and United Laboratories' actions, Taylor has produced no evidence that would allow a jury to reasonably conclude that United Laboratories' legitimate explanations were pretextual. Taylor argues that the "explanation by United [Laboratories] of a change in United's policies is not credible." (Docket 83 at 11.) Taylor does not identify any evidence to support this argument. This conclusory argument is insufficient by itself to demonstrate pretext and defeat United Laboratories' motion for summary judgment.

Specifically, Taylor does not address United Laboratories' legitimate explanation with regard to the decision to remove Taylor's name as a contact person on the state of South Dakota contract. A tenuous temporal relationship is all that Taylor identifies, and that is insufficient to demonstrate pretext in this case. There is no evidence that United Laboratories' legitimate explanation is pretextual.

With regard to United Laboratories' refusal to assign Willmot's accounts to Taylor, Taylor does not respond to United Laboratories'

explanation that its company-wide policy prohibited an employee from handling accounts that were outside the sales representative's assigned territory. A letter that stated this company-wide policy was given to Taylor on June 28, 2005, and subsequently given to the South Dakota Division of Human Rights. (Docket 88, Ex. 1 at 4.) While there is evidence that Taylor had accounts that were outside of South Dakota, those accounts were nonetheless located within her assigned territory. Taylor does not dispute that Willmot's accounts were outside her assigned territory. Thus, Taylor has not presented any evidence that would allow a jury to reasonably conclude that United Laboratories' explanation is pretextual.

With regard to the freight costs, Taylor does not dispute that the state of South Dakota contract at issue specifically required that "such delivery shall be made without cost to the State." (Docket 77, Ex. 14 at 3.) And Taylor does not dispute that United Laboratories' established policy required the freight costs to be shared between United Laboratories and the sales representative under these circumstances. (Docket 89, at 13-14.) Taylor's assertion that she did not have to pay freight costs before or with any other account does not address the clear requirement expressed in the contract with the state of South Dakota that the state was not to pay for delivery. Thus, even if Taylor had established a prima facie case, she has not shown that United Laboratories' legitimate reasons were pretextual.

## IV. Taylor's Claims in the Aggregate

Taylor does not specifically argue that all of these acts collectively constitute retaliation. *See Fercello*, 2010 WL 2945312, at *10 ("[I]t is proper

to consider the cumulative effect of an employer's alleged retaliatory conduct[.]" (citation omitted)). Even if this argument were made, the court finds that a reasonable jury could not conclude that Taylor's protected activities caused the five alleged incidents of retaliation that occurred during an 18-month period. As was the case in *Fercello*, the record shows "a scattered assortment of actions that are either petty, unsubstantiated, or otherwise causally unrelated to [Taylor's] protected conduct." *See id.* Thus, even when viewing the claims in the aggregate, Taylor's claims fail as a matter of law. *See id.* (holding that "the actions of the County in this case do not constitute systematic retaliation" where "a number of allegedly adverse actions took place [in a 19 month time period]").

## CONCLUSION

United Laboratories' motion for summary judgment is granted with regard to Counts 4 and 7. There is insufficient evidence that would allow a reasonable jury to conclude that United Laboratories retaliated against Taylor because she engaged in protected activities. Specifically, other than a tenuous temporal proximity relationship between the protected activities and the alleged acts of retaliation, there is no evidence reasonably inferring that Taylor's protected activities caused United Laboratories to retaliate against Taylor. And even if the temporal proximity was sufficient to infer a causal relationship, there is insufficient evidence to allow a jury to reasonably conclude that United Laboratories' legitimate explanations served as a pretextual basis for retaliating against Taylor.

The remaining counts in the second amended complaint were dismissed, with prejudice, pursuant to a joint motion and stipulation for partial judgment of dismissal. (Docket 63.) Thus, the entire Second Amended Complaint against United Laboratories is dismissed with prejudice.

IT IS ORDERED that United Laboratories' motion for summary judgment (Docket 71) is granted.

IT IS FURTHER ORDERED that the Taylor's Second Amended Complaint (Docket 21) is dismissed with prejudice.

Dated August 6, 2010.

BY THE COURT:

/s/ *Karen E. Schreier*

KAREN E. SCHREIER
CHIEF JUDGE